IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY JONES, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> vs. ) <br> ) <br> ELECTRIC POWER BOARD OF ) <br> METROPOLITAN NASHVILLE AND ) <br> DAVIDSON COUNTY d/b/a NASHVILLE ) <br> ELECTRIC SERVICE, ) <br> ) <br> *Defendant.* ) <br> ) | CIVIL ACTION NO. <br><br> JURY DEMAND |

## COMPLAINT

Plaintiff, TIMOTHY JONES (hereinafter referred to as "Plaintiff" or "Jones"), files his Complaint against Defendant, ELECTRIC POWER BOARD OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY d/b/a NASHVILLE ELECTRIC SERVICE (hereinafter referred to as "Defendant" or "NES"), and alleges as follows:

### NATURE OF COMPLAINT

1. This action is brought by Plaintiff against Defendant for discrimination against him because of his race, color, and origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. ("Title VII"), The Civil Rights Act of 1991, 42 U.S.C. §§ 1981, and 1983 and The Tennessee Human Rights Act ("THRA") Tenn. Code Ann. § 4-21-101, *et seq.*

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331, §1343(4), and §1367 as the Plaintiff brings this action for damages under Title VII, 42 U.S.C. §2000 et. seq., as amended, 42 U.S.C. §1981, §1983 and THRA Tenn. Code Ann. § 4-21-101, *et seq*.

3. The venue is proper in the Middle District of Tennessee, Nashville, Division pursuant to under 28 U.S.C. 1391 as the alleged violations occurred in this judicial district.

## PARTIES

4. Plaintiff is an African American male born in August 3, 1974.

5. Plaintiff is a member of a protected class based on race and color within the meaning of Title VII and 42 U.S.C. §§ 1981 and 1983.

6. Plaintiff is a resident of Tennessee. At all times material to this action, Plaintiff was and is an employee of Defendant NES as defined in 42 U.S.C. § 2000 et seq and 42 U.S.C. §§ 1981 and 1983.

7. Defendant NES is a quasi-governmental entity doing business in the state of Tennessee.

8. NES is an employer as defined by 42 U.S.C. §§ 1981, §1983, and 2000e(b), employing more than 15 individuals and under THRA § 4-21-102(5) and (14).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff has fulfilled all conditions necessary to the institution of this action under Title VII of the Civil Rights act of 1964, as amended and THRA.

10. Plaintiff filed a discrimination Charge against Defendant NES with the Tennessee got it closed due to receiving a Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC").

11. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant for discrimination based on Race, Color, Origin, and Retaliation (Charge No.: 494-2022-00643).

12. On February 24, 2023, a Notice of Right to Sue was issued from the EEOC to the Plaintiff. A true and correct copy of the Notice of Right to Sue is attached hereto as **Exhibit "A"** and fully incorporated herein by reference.

13. Accordingly, this lawsuit is properly and timely filed within ninety (90) days of issuance of Plaintiff's Notice of Right to Sue Letter by EEOC.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

14. Plaintiff was hired approximately July 8, 2008, and has been working with NES for over fourteen (14) years.

15. Plaintiff, over these years, has worked in different areas of NES, i.e., he worked as a Meter Reader, Power Equipment Operator, Lineman - after completing a four-year apprenticeship program, and later a Working Foreman.

16. Plaintiff performed his duties and fulfilled his responsibilities in a satisfactory manner. Despite Plaintiff's long tenure and satisfactory service, he was passed over for promotions on numerous occasions like other qualified African American NES employees.

17. Since the day of his employment, Plaintiff has been subject to continuous, ongoing harassment, retaliation, racial discrimination, and a hostile work environment by his supervisors and other Caucasian employees of NES. At all times relevant to this lawsuit, Plaintiff was subjected to racist comments, racist displays, and an overall pervasive environment.

18. Plaintiff directly heard and/or is aware of NES Caucasian coworkers and supervisors saying racially inflammatory words such as "NIGGER." Plaintiff directly heard and/or

is aware of NES Caucasian coworkers and supervisors making comments calling African Americans "TRASH."

19. Use of racist epithets and slurs is a common practice in the NES environment.

20. Plaintiff reported the racist behavior to Human Resources, but no corrective action was taken.

21. Plaintiff has also been the victim of constant bullying by Caucasian employees, such as Matt Huffines and others, with NES taking no corrective action.

22. On November 15, 2021, an incident of bullying by Matt Huffines occurred in the presence of the Vice-President of Human Resources, Trish Holliday. The incident was also reported by Plaintiff to Rob Shipley, but no meaningful corrective action was taken by NES.

23. Trish Holliday acknowledged that Matt Huffines's behavior violated NES policy, yet no meaningful corrective action was taken.

24. Plaintiff also reported racist and discriminatory behavior committed by NES employees against other African American employees, but no corrective action was taken.

25. Following Plaintiff's continued mistreatment, Plaintiff learned of other African American NES employees experiencing similar discriminatory and hostile treatment at NES.

26. Plaintiff spoke with those African American NES employees regarding their experiences and instances of discrimination.

27. Plaintiff reported racist and discriminatory behavior committed against himself and other African American NES employees including but not limited to Marvin Sain, Jimmie Hunt, and Tracy Gooch but no meaningful investigations or corrective action was taken.

28. Plaintiff further alleges that on several occasions, he applied for promotion but faced racial discrimination in the hiring and promotion practices of NES.

29. Plaintiff alleges that NES personnel changed tests administered to African American applicants, altered job descriptions in such a way to intentionally exclude African American candidates, denied jobs, removed job postings, and outright gave jobs to less qualified Caucasian employees all to exclude African American candidates.

30. For example, in 2018, Plaintiff entered the Lineman apprentice program with Jay Shannon, a Caucasian NES employee. Jay Shannon was allowed to apply for Working Foreman several months before being qualified to do so under NES policy.

31. Not only was Jay Shannon designated qualified to apply for the Working Foreman position while Plaintiff was not, but Jay Shannon was also promoted to Working Foreman.

32. Meanwhile, the Plaintiff completed the apprentice program and had more qualifications than Jay Shannon but was deemed not qualified to even apply for the Working Foreman position.

33. Plaintiff notified management and Human Resources of the discrimination in treatment but was told the matter was "none of his business."

34. Plaintiff believes that he was not promoted because of his race and color.

35. As an additional example, during one of Plaintiff's other attempts at promotion, the Plaintiff was given a test by Superintendent Jason Dickson. Plaintiff's answers were altered by NES management in order to lower Plaintiff's score and promote a lesser qualified Caucasian employee.

36. The discriminatory action of altering Plaintiff's test score to disqualify him from obtaining the Working Foreman job was observed by a NES Human Resources employee.

37. The Plaintiff and the NES Human Resources employee reported the incident to NES management, but no corrective action was taken.

38. Ultimately, the job was given to the lesser qualified Caucasian NES employee.

39. Plaintiff was denied a Working Foreman job three times, despite being more qualified.

40. Plaintiff was more qualified each time yet was consistently overlooked due to his race.

41. On the third time that the Plaintiff was denied a Working Foreman position, the Plaintiff was only one of two candidates: Plaintiff and another Caucasian employee.

42. The Caucasian employee dropped out of the interview process, leaving only the Plaintiff as a candidate.

43. To avoid the Plaintiff obtaining the position of Working Foreman, NES closed out the job posting.

44. The hiring personnel, Ron Jennings, made it clear that he "did not want a Black man to get the job."

45. Yet again, the Plaintiff complained of the racist and discriminatory treatment, but no corrective action was taken.

46. The next time a Working Foreman position was available to which Plaintiff applied, he was the only candidate and received the job by "default" despite his overwhelming qualifications to have obtained the prior posts.

47. Plaintiff's pleas for help from management and NES Human Resources remain unaddressed as of the drafting of the present Complaint.

48. The hostile environment at NES is continuous and ongoing. Every time Plaintiff suffered racial comments and discrimination during his employment, he filed his grievances or

6
Complaint
Case 3:23-cv-00512   Document 1   Filed 05/20/23   Page 6 of 14 PageID #: 6

reported the incidents to his supervisors and/or managers, but everything was in vain as no corrective action has ever been taken to resolve such grievances.

49. On countless occasions, Plaintiff faced racial discrimination at NES, which includes but not limited to racial gestures, e.g., a noose hanging at work (observed and reported by Plaintiff), constantly being overlooked for jobs due to his race even though he was more qualified than his fellow white coworkers, unfair treatment by supervisors as well as manipulation of the performance appraisal system and grades, being graded differently because of his race, coworkers that are favorites of the supervisors receive better grades and gain more points towards promotion (they all happen to be white). A true and correct copy of the photograph depicting the noose viewed by Plaintiff on NES property is attached hereto as **Exhibit "B"** and fully incorporated herein by reference.

50. Throughout his employment at the NES, Plaintiff has experienced and witnessed African American employees not being given opportunities for promotion and advancement equal to white employees.

51. There is no dearth of examples of NES's discrimination based on race, color, and national origin. Most recently, on January 9, 2023, NES Operations Manager Ty Jones changed his email profile to a "Not Equal" '≠' symbol. The use of this symbol is an attempt to claim that different races are not equal to each other and to imply that whites are superior to blacks. A true and correct copy of Ty Jones' email profile and this hate symbol's description is attached hereto as **Exhibit "C"** and fully incorporated herein by reference. Despite reports of Jones' use of this symbol directly to NES Human Resources and legal counsel, no corrective action has been taken.

52. Plaintiff has been adversely affected by the challenged practice and pattern of racial discrimination detailed in this Complaint, including Defendant NES's subjective selection and

discipline policies, practices and procedures, and unequal terms and conditions of employment, which have prevented Plaintiff from advancing into higher and better paying positions for which he was qualified, and have deprived him of the opportunity to work in an integrated environment in which African-American employees hold higher-level positions. Plaintiff has been subjected to a racially hostile working environment.

53. As a result of Defendant's acts or conduct, Plaintiff has experienced pain and suffering, racism, stress, anxiety, unfair treatment and bullying, and receiving unfair ratings.

54. Plaintiff has been deprived of employment opportunities and has otherwise been subjected to Defendant's intentional discrimination regarding his rights under Title VII and 42 U.S.C. §§ 1981 and 1983, which has caused Plaintiff to suffer economic losses, including lost wages and benefits, interest, attorney fees and costs, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and damages in violation of Title VII and 42 U.S.C. §§ 1981 and 1983 prohibiting discriminatory and retaliatory treatment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Intentional Race Discrimination
### (§1983 for violations of §1981 and Title VII)

55. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–54 with the same force and effect as though fully set forth herein.

56. Plaintiff has been subjected to racial discrimination in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, including, but not limited to, a pattern and practice of intentional discrimination and a battery of policies, practices, and procedures having unlawful, disparate impact on his employment opportunities. Defendant NES follows a policy and practice of restricting the employment opportunities of African American employees

8
Complaint

such as Plaintiff to lower job classifications and compensation levels. The means of accomplishing such racial discrimination include, but are not limited to, the NES's selection and promotional procedures, unequal terms and conditions of employment, and a history of tolerating and encouraging a racially hostile working environment.

57. As a protected class member, Plaintiff was discriminated against when he applied for the Working Forman position and was graded lower by NES Supervisors than other similarly situated NES's Caucasian employees.

58. Plaintiff was subjected to intentional discrimination by NES when he was denied a promotion even though he was qualified for the job; in contrast, Jay Shannon, a Caucasian coworker, was promoted to Working Foreman.

59. Race is a motivating factor in NES's rejection of Plaintiff for the position.

60. NES intentionally discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on the basis of race in violation of Title VII and §1981.

61. NES treated Plaintiff differently than similarly situated Caucasian employees.

62. Due to Defendant's disparate treatment, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

63. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

## SECOND CAUSE OF ACTION
### Racial Harassment – Hostile Work Environment
### (§1983 for violations of §1981 and Title VII)

64. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–54 with the same force and effect as though fully set forth herein.

65. Plaintiff deserves a fair work environment free of racial animus.

66. Plaintiff was subjected to a hostile work environment within the meaning of the Title VII of the Civil Rights Act of 1964, Section 1981 and 1983 due to harassment by NES employees in administration, managerial positions, and coworkers.

67. Plaintiff was subjected to racially offensive, severe, or pervasive jokes, insults, and slurs on various occasions by NES Supervisors, Working Foremen, and other Caucasian employees.

68. Plaintiff was the victim of constant bullying and racial slurs such as being called "Nigger" by NES Caucasian employee(s).

69. Plaintiff was subjected to and forced to endure harassment at NES, resulting in a hostile work environment.

70. Plaintiff did not welcome the harassment he endured.

71. Plaintiff found the harassment to be humiliating and intimidating, and the harassment unreasonably interfered with Plaintiff's work performance by creating an intimidating, hostile, or offensive environment.

72. The NES failed to take prompt remedial action to stop the harassment Plaintiff endured.

73. NES is liable for a racially hostile work environment under Title VII, Section 1981, which results from discriminatory practices, comments, and harassment of Plaintiff.

74. Due to such discriminatory acts, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

75. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

**THIRD CAUSE OF ACTION**
Racial Discrimination
**(Tennessee Human Rights Act § 4-21-101, Et Seq.)**

76. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–54 with the same force and effect as though fully set forth herein.

77. Tennessee Human Rights Act § 4-21-101 (a)(1) "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972……"

78. NES is an employer under THRA § 4-21-102(5) in that it is a business with eight or more employees doing business in the State of Tennessee.

79. Plaintiff has been subjected to racial discrimination in violation of the Tennessee Human Rights Act. "Discriminatory practices" means any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race, creed, color, religion, sex, age or national origin. THRA § 4-21-102(4).

80. Plaintiff was subjected to racial discrimination by NES's Caucasian Supervisors.

81. NES is liable under Tennessee Human Rights Act for racial discrimination resulting from the discriminatory practices of its employees.

82. Due to such discriminatory acts, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

83. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

## FOURTH CAUSE OF ACTION
### Negligence

84. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–54 with the same force and effect as though fully set forth herein.

85. NES owed a duty to Plaintiff to protect him from employment discrimination and harm while at the workplace, a duty to properly supervise its employees, and correct ongoing harassment at the workplace.

86. NES had actual and constructive knowledge of the multiple incidents of racism, harassment, and racist displays and language being used by NES employees at work, as Plaintiff time to time, reported his grievance to his Supervisors and Managers. However, NES failed to take any corrective action to protect Plaintiff and other similarly situated employees from such racial discrimination and harassment.

87. NES engaged in, condoned, and ratified harassing and discriminatory conduct of its employees.

88. NES was negligent in failing to properly supervise its employees, in failing to protect Plaintiff from harm and employment discrimination at the workplace, and in failing to prevent ongoing harassment in violation of Title VII, Section 1981, and THRA.

89. NES's actions and/or inactions injured Plaintiff.

90. Due to NES's failure to prevent racial discrimination and harassment at work, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

91. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiff, TIM JONES, prays:

(i) That the Defendant be served and required to answer within the time allowed by law;

(ii) That a jury trial be held and a judgment entered in his favor;

(iii) That Plaintiff be granted a judgment against NES for the sum of money determined by the jury to be sufficient to compensate him for the damages complained of herein, including but not limited to embarrassment and humiliation, emotional pain suffering and mental anguish, stress, depression, and anxiety loss of enjoyment of life under THRA;

(iv) That Plaintiff be granted a judgment against NES for punitive damages and compensatory damages under Title VII and 42 U.S.C. §§ 1981 and 1983;

(v) The Plaintiff be awarded "back pay" damages to be determined by the jury under Section 1981 and 1983;

(vi) That Plaintiff be granted a judgment against NES for reasonable attorney fees and costs incurred in bringing this action;

(vii) Prejudgment interest and, if applicable, post-judgment interest; and;

(viii)  Such other and further legal or equitable relief to which Plaintiff may justly be entitled.

Respectfully submitted,

/s/Ashley L. Upkins
ASHLEY L. UPKINS, ESQ.
TN BPR No. 033598
The Cochran Firm - Nashville, LLC
1720 West End Avenue, Suite 320
Nashville, TN 37203
Office (615) 678-6278
aupkins@cochranfirmnashville.com
*Attorney for Plaintiff*
Timothy Jones