IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| TIMOTHY JONES,<br><br>      Plaintiff,<br><br>vs.<br><br>ELECTRIC POWER BOARD OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY d/b/a NASHVILLE ELECTRIC SERVICE,<br><br>      Defendant. | Case No. 3:23-CV-00512<br>Judge Aleta A. Trauger<br><br>JURY DEMAND |

### INITIAL CASE MANAGEMENT ORDER

**A.    JURISDICTION:** The court has jurisdiction pursuant to 28 U.S.C. §1331, §1343(4), and §1367.

**B.    BRIEF THEORIES OF THE PARTIES:**

**1)    PLAINTIFF:** Timothy Jones ("Mr. Jones") is an African American male, age 49, was employed by NES for over 14 years. NES engaged in negligence, racial discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. ("Title VII"), The Civil Rights Act of 1991, 42 U.S.C. §§ 1981, and 1983 and The Tennessee Human Rights Act ("THRA") Tenn. Code Ann. § 4-21-101, et seq. Despite his long tenure and dedication to NES, Mr. Jones experienced blatant and continuous racism and discriminatory promotion practices in order to promote the less qualified Caucasian candidates over Mr. Jones. Job postings were closed out and candidate test scores were even changed in order to ensure that less qualified Caucasian candidates would obtain the job over Mr. Jones. Mr. Jones has been the victim of constant bullying, hearing other African American NES workers being called "Nigger" and "Trash." Mr. Jones was treated differently than similarly situated Caucasian

employees. Mr. Jones was retaliated against for reporting such practices to appropriate NES personnel. Mr. Jones's experiences show a pattern of racism, harassment and illegal exclusion within NES resulting in a hostile work environment. Mr. Jones satisfied all conditions precedent to filing this suit and his claims were filed in a timely manner. Mr. Jones should prevail based on the facts and the law. Mr. Jones should be awarded lost wages, lost benefits, lost earning potential, lost retirement benefits, compensatory damages and/or punitive damages, attorneys' fees, expenses, prejudgment interest and post judgment interest.

**2) DEFENDANTS:** Defendant Electric Power Board of Metropolitan Nashville and Davidson County, using the service name Nashville Electric Service ("NES" or "Defendant") denies any and all allegations of wrongdoing and liability. Plaintiff was not subject to race harassment or discrimination in any manner with respect to his employment with NES. To date, he remains employed by NES and all workplace complaints made by him have been investigated and/or addressed by NES.

As an initial note, Plaintiff's claim for negligence is based solely upon the same factual allegations of race discrimination and/or race harassment asserted by Plaintiff and are thus preempted by the Tennessee Workers Compensation Act, the Tennessee Human Rights Act ("THRA") and Title VII.

Further, all claims for punitive damages against NES are preempted as it is a governmental entity. Additionally, Plaintiff cannot bring a cause of action against NES under Section 1981 as it is a municipality and Plaintiff can point to no municipal policy or custom that facilitated this alleged discrimination.

Additionally, many of the acts Plaintiff alleges amount to discrimination and/or harassment are barred by the applicable statutes of limitations. Plaintiff filed his EEOC charge on March 21,

2022. Thus, any alleged conduct that took place prior to May 25, 2021 is untimely with respect to Plaintiff's Title VII claims. Plaintiff filed his Complaint on May 20, 2023. Thus, any alleged conduct that took place prior to May 20, 2022, is untimely with respect to Plaintiff's THRA and Section 1983 claims[1] and any alleged conduct that took place prior to May 20, 2019 is untimely with respect to Plaintiff's Section 1983 claims.

As to Plaintiff's allegations that he was passed over for promotions because of his race, Plaintiff's claims of discrimination fail because the positions were filled by individuals more qualified than Plaintiff. While Plaintiff may believe his seniority and work ethic render him qualified for these positions, his self-serving personal assessment of himself does not override NES's promotion procedures.

As to Plaintiff's allegation that he was discriminated against when Jay Shannon, a Caucasian, was qualified to apply for and was ultimately promoted to the position of Working Foreman over Plaintiff, this claim fails because Plaintiff suffered no adverse action as he never attempted to apply for the position that Jay Shannon sought and was ultimately selected for. In order to succeed on a failure to promote claim, Plaintiff must have actually applied for the position in question in order to establish a *prima facie* claim.

As to Plaintiff's claims that NES personnel changed tests administered to African American applicants, altered job descriptions in ways to exclude African American candidates and scored African American employees lower on performance evaluations, these claims fail as Plaintiff is not able to point to a similarly situated employee outside of his protected class who was not similarly affected by these decisions. Further, even if Plaintiff could point to a similarly

---

[1] There is no federal statute of limitations for § 1983 claims. When federal law is silent on an issue in a federal court § 1983 action, 42 U.S.C. § 1988(a) requires the federal court to borrow state law on the issue, provided it is consistent with the policies underlying § 1983

situated individual who was not affected, his claim would still fail because NES had legitimate, non-discriminatory reasons for any decisions it made relating to the altering of job qualifications/descriptions, posting of available positions, grading employee performance, and tests used during the interview stages for each promotion decision.

As to Plaintiff's claim he was subject to racial harassment because he was bullied by Matt Huffines, this claim fails as no comments made during this incident or prior to it by Matt Huffines had to do with race, and it was an isolated incident that does not meet the severe or pervasive standard required to succeed on a race harassment claim. Further, as to Plaintiff's general claims that he was subject to a hostile work environment because he had heard from other co-workers or was aware that other Caucasian employees had made racially inappropriate comments to other African American employees, Plaintiff cannot establish a race harassment claim based on these allegations as he does not have standing to bring claims on behalf of other employees or based on comments made to other employees when he himself has not experienced these statements.

As to Plaintiff's claim that he was subject to racial harassment because he heard about the noose that was discovered at the Donelson Service center in May of 2020, this claim fails because he never directly witnessed the noose, and NES immediately investigated the complaints related to this incident and responded with swift corrective action. NES's CEO issued a companywide statement providing that the presence of this item on company property was unacceptable and re-iterated the company harassment policy. Additionally, NES followed up with company-wide training relating to its mutual respect and anti-harassment policies and protocols to prevent this type of incident from occurring again.

Plaintiff was not subject to any race-based discrimination or severe or pervasive harassment. Plaintiff remains employed and NES continues to investigate each time he reports

alleged harassment. NES has legitimate non-discriminatory reasons for its promotion decisions – NES has promoted the most qualified candidates. Plaintiff's claims fail and should be dismissed.

Finally, while Plaintiff's theory of the case references retaliation, his Complaint does not include a separate count or cause of action for retaliation.

    **C.**    **ISSUES RESOLVED:** Jurisdiction and venue.

    **D.**    **ISSUES STILL IN DISPUTE:** Liability and damages.

    **E.**    **INITIAL DISCLOSURES:** The parties shall exchange initial disclosures pursuant to FED. R. CIV. P. 26(a)(1) on or before **December 18, 2023**. [2]

    **F.**    **CASE RESOLUTION PLAN AND JOINT ADR REPORT:** The parties shall file a joint Alternative Dispute Resolution ("ADR") report on or before **August 9, 2024**.

The joint report shall state whether the parties believe ADR might assist in resolution of the case. If a judicial settlement conference is requested in either a joint report or separately, the parties shall also state (i) the reasons why mediation is not feasible; (ii) their proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference.

    **G.**    **DISCOVERY:** The parties shall complete all written discovery on or before **July 26, 2024** and depose all fact witnesses on or before **October 31, 2024**. Discovery is not stayed during dispositive motions, unless ordered by the court. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

    **H.**    **MOTIONS TO AMEND:** The parties shall file all Motions to Amend on or before **December 13, 2023**.

---

[2] The parties are requesting additional time to serve initial disclosures due to the Thanksgiving holiday.

**I.     DISCLOSURE OF EXPERTS:** The Plaintiff shall identify and disclose all expert witnesses and expert reports on or before **March 29, 2024**. The defendants shall identify and disclose all expert witnesses and reports on or before **June 7, 2024**.

**J.     DEPOSITIONS OF EXPERT WITNESSES:** The parties shall depose all expert witnesses on or before **December 6, 2024**.

**K.     DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions on or before **January 10, 2025**. Responses to dispositive motions shall be filed within twenty-one (21) days after the filing of the motion. Optional replies may be filed within ten (10) days after the filing of the response. Briefs shall not exceed 20 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

**L.     ELECTRONIC DISCOVERY:** The parties do not anticipate significant electronic discovery. In the event that the parties must conduct electronic discovery, the parties anticipate reaching an agreement on how to proceed. Administrative Order No. 174 therefore, need not apply to this case. However, in absence of an agreement, the default standards

**M.     ESTIMATED TRIAL TIME:** The parties expect the trial to last approximately **3-4** days.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
U.S. District Judge

APPROVED FOR ENTRY:

*/s/ Ashley L. Upkins, Esq.*
Ashley L. Upkins, Esq. (#033598)
The Cochran Firm – Nashville, LLC
1720 West End Avenue, Suite 320
Nashville, TN 37203
(615) 678-6278
aupkins@cochranfirmnashville.com
*Attorney for Plaintiff*

*/s/ Brian C. Winfrey*
Brian Christopher Winfrey (#025766)
The Winfrey Firm/Morgan & Morgan
2021 Richard Jones Rd, Ste 310A
Nashville, TN 37215
(615) 601 1276
brian@thewinfreyfirm.com
*Attorney for Plaintiff*


*/s/ Mary Dohner-Smith*
Mary Dohner-Smith TN BPR No. 21451
mdohner@constangy.com
William A. Blue, Jr. TN BPR No. 010378
zblue@constangy.com
Jacob A. Freeland TN BPR No. 21451
jfreeland@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
750 Old Hickory Boulevard
Suite 2-260
Brentwood, TN 37027
PH: 615.340.3800
*Counsel for Defendant*